COMMONWEALTH *vs.* CHRISTOPHER F. DiMINICO.

Suffolk. May 2, 1978. — July 7, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Practice, Criminal,* New trial, Competency to stand trial. *Due Process of Law,* Competency to stand trial.

The judge at a criminal trial did not abuse his discretion in failing to hold a hearing on the defendant's mental competency to stand trial where the judge's conclusion that there was no "substantial question of possible doubt" as to the defendant's competence was supported by a pretrial report that the defendant was competent to stand trial, by the lack of any history of pronounced irrational behavior, by current psychiatric opinion, by the judge's own observation of the defendant, and by statements of the defendant and his counsel. [678-679]

MOTION for a new trial filed in the Superior Court on May 12, 1976.

The proceeding was heard by *Roy,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*J. Russell Hodgdon* for the defendant.

*Robert J. McKenna, Jr.,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J. The defendant was convicted in 1970 of murder in the second degree and armed robbery committed in 1969, and the convictions were affirmed. *Commonwealth* v. *O'Brien,* 360 Mass. 42 (1971). In 1976 he filed a motion for a new trial, claiming that in 1970 he was not competent to stand trial. The trial judge denied the motion without a hearing, we allowed the defendant's application for direct appellate review, and we now affirm.

We summarize the allegations made by the defendant in his motion for a new trial as they are supported by exhibits and the transcript of the trial proceedings. The defendant

was tried with three codefendants. On May 6, 1970, which was to have been the eighth day of trial, the defendant jumped from the third or fourth tier of the jail and fractured his right ankle and sprained a finger. He was taken to Boston City Hospital, then to the Massachusetts Correctional Institution at Norfolk, again to Boston City Hospital, and was returned to the jail for the night. A leg cast was applied, and at various times he was given pills or capsules to relieve pain. Meanwhile the judge held lobby conferences with counsel and suspended the trial.

The next day, May 7, the judge read into the record a medical report of a doctor at the Boston City Hospital. He then had the defendant examined by a psychiatrist. The psychiatrist reported that the defendant was in pain and had a remarkably high pulse rate, and was reacting not only to pain and swelling "but to the dilemma that he faces in the trial." At first the judge said, "In view of the opinion of the doctor, I've got to declare a mistrial in respect of DiMinico." After discussion with the psychiatrist and counsel, however, he deferred decision until the following morning, noting that he had a pretrial report that the defendant was competent to stand trial. Counsel for the defendant said he would withdraw any objection if he could get an orthopedic opinion and the psychiatrist said the defendant was all right. Later that day the defendant was examined by an orthopedist at Massachusetts General Hospital.

On May 8 the judge read into the record the orthopedist's report, and asked the psychiatrist to examine the defendant. Later the judge announced that the psychiatrist had reported the defendant as "in much better condition" and had found the defendant "to be fairly angry." The defendant "refused to answer any questions as to why he caused himself to be injured." The judge ordered that the trial proceed. At the lunch recess counsel told the judge that the defendant was falling asleep during the testimony. The judge said that the psychiatrist could see the defendant over lunchtime, and need not report back if the defendant was "conscious" of "what's going on." During the afternoon counsel told the

judge, first, that he was convinced medication had made the defendant "drowsy," and, later, that the defendant was "sleeping in this courtroom." Each time the judge said he had been watching the defendant, and ordered the trial to continue. On the second occasion the judge also said, "I think he is of sufficient consciousness to be aware of what's going on. And he may be a faker."

The Commonwealth calls our attention to events the following day. On May 9 defense counsel said, "Your Honor, today this boy is thinking clearly. Whatever they gave him last night gave him a good night's sleep. He looks much better." Thereafter the defendant was sworn as a witness. He admitted his own participation in the robbery, and emphatically testified that one of the codefendants was not with him, but he refused to answer questions about other persons who might have been involved. See *Commonwealth* v. *O'Brien*, 360 Mass. 42, 47-48 (1971). The answers he gave seem to be responsive and coherent.

In disposing of the defendant's previous appeal, we reviewed the evidence in accordance with G. L. c. 278, § 33E. We said, "The trial appears to have been conducted with unusual skill and with scrupulous regard for every proper interest of each defendant." *Commonwealth* v. *O'Brien*, *supra* at 50. There is no claim that the defendant was incompetent after trial, and no reason is given for the delay in filing a motion for a new trial until May, 1976, six years after the trial. The judge in denying the motion said, "This motion contains nothing which could not have been presented and argued on appeal by the experienced and competent counsel who effectively represented the Defendant. The evidence was reviewed under G. L. c. 278, § 33E. *Com.* v. *O'Brien*, 360 Mass. 42, 50 [1971]."

We have recently reviewed the law governing competency to stand trial. See *Commonwealth* v. *Hill*, *ante* 50, 51-62 (1978), and cases cited. Where there was "a substantial question of possible doubt" about the defendant's competency to stand trial, it was error to proceed to trial

without holding a hearing on the question of his competence to stand trial. *Id.* at 62. In our view the present case is different. On May 7, it is plain, the judge thought there was a substantial question of possible doubt as to the defendant's competence, but he did not proceed to trial. On May 8 he did not think there was such a question, and the trial proceeded. We think he was right. His conclusion was supported by a pretrial report that the defendant was competent to stand trial, by the lack of any prior history of pronounced irrational behavior, by current psychiatric opinion, by the judge's own observation of the defendant, and by statements of the defendant and his counsel. In any event, it has not been established that he abused his discretion. *Commonwealth* v. *Vailes,* 360 Mass. 522, 524 (1971).

As in the *Vailes* case, there is here no evidence "of the defendant's violent or extremely irrational conduct in the court room," nor of his "long and emphatic history of mental incompetence." *Id.* at 525, and cases cited. In *Commonwealth* v. *Hill, supra,* the defendant had a "long history of treatment in mental hospitals," *supra* at 57. Compare *Drope* v. *Missouri,* 420 U.S. 162, 181 (1975) (evidence of mental illness, in light of suicide attempt during trial, required suspension of trial pending evaluation), with *Commonwealth* v. *Kostka,* 370 Mass. 516, 522-523 (1976) (finding of competence after hearing, despite evidence of mental illness including ingestion of light bulb, *id.* at 520 n.3). The defendant was in physical distress because of his broken ankle, and he was under tension because of loyalty to a codefendant, but otherwise no more is shown than "the display of a few mannerisms which are consistent with no more than nervousness, diffidence, boredom or dissembling." *Commonwealth* v. *Vailes,* 360 Mass. 522, 525 (1971).

We do not place our decision on the ground of waiver. See *Commonwealth* v. *Hill, supra* at 53-54. Even if there had been doubt as to competency on May 8, 1970, however, we see nothing to indicate that there was such doubt on May 9 or thereafter. In view of the defendant's testimony on

May 9, which amounted to a confession of the crimes in
open court, it seems likely that lack of competence on May 8
would have been harmless beyond a reasonable doubt.

*Order affirmed.*